UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER TARLINSKY and | : | |
| EKATERINA TARLINSKAYA, | : | |
| Plaintiffs, | : | No. 3:19-CV-659 (VLB) |
| | : | |
| v. | : | |
| | : | May 23, 2019 |
| MICHAEL R. POMPEO et al., | : | |
| Defendants. | : | |

## ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER DISMISSING CASE FOR LACK OF JURISDICTION

Before the Court is Plaintiff Peter Tarlinsky's and Ekaterina Tarlinskaya's Motion for a Temporary Restraining Order (TRO), requesting that the Court order the United States Secretary of State to reinstate Ms. Tarlinskaya's revoked visa, require the State Department to provide Ms. Tarlinskaya with further justification for the revocation, and review the revocation. [Dkt. 12]. For the following reasons, the Motion for TRO is DENIED and the case is DISMISSED for want of jurisdiction.

## Background

The facts are taken from the Complaint. [Dkt. 1]. Plaintiff Peter Tarlinsky is a teenager who has been studying at a private preparatory school in the United States since the summer of 2016 at the Marvelwood school in Kent. [*Id.* at ¶ 9]. He

1

has applied for and been granted several student visas ("F-1 visas"). [*Id.* at ¶ 1].[1] Plaintiff Ekaterina Tarlinskaya is Peter Tarlinsky's mother. [*Id.*] Ekaterina Tarlinskaya has been accompanying Peter Tarlinsky in the United States and "assisting him with housing and other logistical matters." [*Id.* at ¶ 10]. She entered the country through a visitor's visa ("B-2 visa"). [*Id.*] Her visa was set to expire on May 31, 2019. [Dkt. 12, at 8 n. 1].

On March 19, 2019, without prior notice, Ms. Tarlinskaya received an email from a consular officer at the United States Embassy in Moscow informing her that her B-2 Visa had been revoked. [Dkt. 1, ¶ 12]. The embassy informed her: "Additional information became available after your visa's issuance calling into question your continued eligibility." [*Ibid.*] The message did not specify the nature of the "additional information."

Plaintiffs' counsel sent emails to the Embassy on March 21, 2019, March 28, 2019, and April 19, 2019, requesting review of the revocation decision. [Dkt. 1, at ¶ 13-15]. Counsel included in these messages a copy of Peter Tarlinsky's student visa and a copy of a lease for a Connecticut home during the academic year signed by Ekaterina Tarlinskaya and Oleg Tarlinskiy. [Dkt. 1-1 (Student Visa); Dkt. 1-3 (Lease)]. On April 10, 2019, the Embassy responded, stating that Ms. Tarlinskaya's visa had been denied based on Section 214(b) of the Immigration and Nationality

---

[1] The complaint consistently refers to Peter Tarlinsky as a "minor." *See, e.g.* [Dkt. 1, ¶¶1, 17]. The materials presented with the complaint indicate that Peter Tarlinsky's date of birth is July 28, 2000. [Dkt. 1-1]. Therefore, Mr. Tarlinsky is not a minor, he is almost 19 years old.

Act ("INA"). [Dkt. 1, ¶ 15]. The Embassy's message contained no further details about the finding. [*Id.*].

On April 10, 2019, Plaintiff sent a fourth message to the Embassy requesting review of the visa revocation. [Dkt. 1, ¶ 16]. The Embassy did not respond to that message. [*Id.*]. To this date, the Embassy has not indicated that it will or will not review the visa revocation. [*Id.* at ¶ 16]. Plaintiff Ekaterina Tarlinskaya wishes to return to the United States to attend her son's graduation, which will take place on June 1, 2019. [Dkt. 1, ¶ 17].

## Legal Standard

A TRO is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy*, 477 F.Supp.2d 472, 474 (D. Conn. 2007) (quoting *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)). The Court has discretion whether to issue a TRO where specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and the movant certifies in writing any efforts made to give notice and the reasons why it should not be required." *Holley v. Cournoyer*, No. 17-cv-587 (VAB), 2018 WL 340025 at *2 (D. Conn. January 9, 2018) (quoting *Oliphant v. Villano*, No. 9-cv-862 (JBA), 2010 WL 537749 at *12 (D. Conn. Feb. 11, 2010)). "The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers School Dist.*, 561 F.3d 97, 107 (2d Cir. 2009).

3

The factors considered in determining whether to issue a TRO are similar to those used in considering a motion for a preliminary injunction. *See Control Sys, Inc. v. Realized Sols., Inc.*, No. 3:11-cv-1423 (PCD), 2011 WL 4433750 at *2 (D. Conn. Sept. 22, 2011)(citing *Local 1814, Int'l Longshoreman's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)). Therefore, to obtain a TRO, the moving party must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotation marks and citation omitted). The injunction must also be in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The value of this standard "lies in its flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation." *Citigroup Glob. Markets, Inc.*, 598 F. 3d at 35.

Broad and largely unreviewable power to issue or revoke a visa is statutorily vested in the Secretary of State. "After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation. . . .There shall be no means of judicial review (including review pursuant to section 2241 of title 28 or any other habeas corpus provision, and sections 1361 and 1651 of such title) of a revocation under this subsection…" 8 U.S.C. § 1201(i). "[A] consular officer's decision to deny a visa is immune from judicial review." 573 F.3d 115,

123 (2d Cir. 2009); see Lleshi v. Kerry, 127 F.Supp.3d 196, 199-200 (S.D.N.Y. 2015) (noting that the doctrine of consular nonreviewability is "long recognized within this Circuit" and collecting cases). Even though the underlying decision to grant or deny a visa is immune from judicial review, Courts still may review the procedure surrounding that decision to the extent that binding authority exists. *Mantena v. Johnson*, 809 F.3d 721 (2015).

The procedure for issuing and revoking a visa are set forth in the Code of Federal Regulations and elaborated upon in the State Department's Foreign Affairs Manual. The applicable federal regulation is 22 C.F.R. § 41.122. Under the regulation, "[a] consular officer, the Secretary, or a Department official to whom the Secretary has delegated this authority" is authorized to "revoke a nonimmigrant visa at any time, in his or her discretion." 22 C.F.R. § 41.122.[2] "Unless otherwise instructed by the Department, a consular officer shall, if practicable, notify the alien to whom the visa was issued that the visa was revoked or provisionally revoked." 22 C.F.R. § 41.122(c). In the State Department's Foreign Affairs Manual, the department identifies scenarios in which notification of intent to revoke a visa would not be practicable: "[If], for instance, the post did not know the whereabouts of the alien, or the alien's departure is not imminent." 9 FAM 403.11-4(A)(1)(a)(2). The Manual notes that even if the post knows the location of

---

[2] A consular officer may also "provisionally revoke a nonimmigrant visa while considering information related to whether a visa holder is eligible for the visa." 22 C.F.R. 41.122 (b)(2). Plaintiff Tarlinskaya asserts that her visa was revoked, not provisionally revoked, and her correspondence with the consular officer confirms this. *See* [Dkt. 1-7 (March 19, 2019 Email Regarding Revocation)].

5

an alien and the alien's departure is not imminent, notice is not required if "the consular officer has reason to believe that a notice of this type would prompt the alien to attempt immediate travel to the United States." *Id.*

At the outset, the Court notes that Plaintiffs repeatedly rely on the Foreign Affairs Manual ("FAM") as authority supporting Ms. Tarlinskaya's right to notice of revocation and review. As an initial matter, that reliance is misplaced. In support of their contention that review of the visa revocation is required by law, Plaintiffs rely on a provision of the FAM which relates to 22 C.F.R. § 42.81(e), which governs visa refusals rather than visa revocations. The regulations for visa revocation are contained in the federal code at 22 C.F.R. § 42.122. The Court applies those regulations which relate to the procedural posture of Ms. Tarlinskaya's visa to determine whether the decision to revoke her visa is reviewable.

Second, even if the regulation relied upon were applicable the corresponding FAM provision would not support the relief sought because "internal guidance documents are not binding agency authority." *Cruz-Miguel v. Holder*, 650 F.3d 189, 200 (2d Cir. 2011). The FAM is an internal guidance document intended for State Department employees, and its text does not bind the agency. *See Jaen v. Sessions,* 899 F.3d 182, 187 n. 4 (2d Cir. 2018) (applying *Cruz-Miguel* in holding that the FAM was not entitled to *Chevron* deference because the FAM is not binding agency authority).

**Analysis**

As a preliminary matter, the Court notes that, even if it were to find that it had jurisdiction and that Plaintiffs satisfy the requirements for a TRO, the doctrine of separation of powers would bar the Court from reinstating Ms. Tarlinskaya's visa. The Immigration and Nationality Act states that the decision to grant or revoke visas is reserved only to the Department of State. 8 U.S.C. § 1201(i). The Supreme Court has strongly articulated the strength of the separation between the political branches and the judicial branch in this area, holding: "For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. . . . Over no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (internal citations omitted).

If the Court granted the relief sought by Plaintiffs, the Judiciary would be arrogating to itself the authority to issue visas. At most, the Court could order the Department of State to provide notice and review the revocation if binding authority created such a duty, but there would be no basis in statute or in the federal regulations to order those procedures to be expedited prior to Peter Tarlinsky's June 1, 2019 graduation date. Therefore, even if the Court had subject matter jurisdiction and found that Plaintiffs were likely to succeed on the merits of their claim, the Court would not have the authority to prescribe a remedy that would ensure Ms. Tarlinskaya could enter the country before her visa's expiration on May 31, 2019.

### A. The Court Lacks Subject Matter Jurisdiction

The Court lacks subject matter jurisdiction over Plaintiff's claims. Under the Administrative Procedure Act, there is a strong presumption favoring judicial review of administrative action. *Salazar v. King*, 822 F.3d 61, 74 (2d Cir. 2016). "From the beginning our cases have established that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Id.* (quoting *Bowen v. Mich Acad. Of Family Physicians,* 476 U.S. 667, 670 (1986). There is persuasive reason to believe that judicial review is precluded when agency action is committed by law to agency discretion. *See* Administrative Procedure Act § 701(a)(2). Such discretion exists in a statute when "statutes are drawn in such broad terms that in a given case there is no law to apply, such that there is no meaningful standard against which to judge the agency's exercise of discretion." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotations omitted). "To determine whether there is 'law to apply' that provides 'judicially manageable standards' for judging an agency's exercise of discretion, the courts look to the statutory text, the agency's regulations, and informal agency guidance that govern the agency's challenged action." *Salazar*, 822 F.3d at 76 (2d Cir. 2016) (internal citations omitted).

Count One seeks a writ of mandamus holding that the Embassy had a duty to give notice of the revocation to Ms. Tarlinskaya and review that revocation. [*Id.* at ¶¶ 18-23]. Count Two alleges a violation of the Administrative Procedure Act on the ground that the State Department failed to review Ms. Tarlinskaya's

revocation in a timely manner. [*Id.* at ¶ 25]. Count Three asserts that the State Department failed to provide notice of intent to revoke Ms. Tarlinskaya's visa. [*Id.* at ¶¶ 27-29]. Count Four alleges that the basis for revoking Ms. Tarlinskaya's visa was improper because revocation cannot be based on "suspected ineligibility." [Dkt. 1, ¶¶ 30-33]. All of these claims fail.

First, the Court lacks jurisdiction over the claims in Counts One, Two, and Three concerning the decision to provide notice to Plaintiff Ekaterina Tarlinskaya because that decision is committed to agency discretion. The Immigration and Nationality Act does not address notice in visa revocation, only stating that "the consular officer or the Secretary of State may at any time, in his discretion, revoke [a] visa." 8 U.S.C. § 1201(i). The statute further provides "there shall be no means of judicial review . . . of a revocation under this subsection. . . ." *Id.* The agency regulations only provide that the Department must provide notice of revocation "if practicable." 22 C.F.R. § 41.122(c). The FAM guidance informs employees that the regulations "require you to notify the alien of the intent to revoke a visa, if such notification is practicable…An after-the-fact notice that the visa has already been revoked would not be sufficient, unless prior notice of intent to revoke was found not to be practicable in the particular case." 9 FAM 403.11(A)(1)(a)(1).

Ms. Tarlinskaya was provided notice of her revocation on March 19, 2019. [Dkt. 1, ¶ 12]. Neither the statute nor the regulations indicate that such notice must be provided in advance or specify the level of detail that must be provided. Were the Court to review the sufficiency of Ms. Tarlinskaya's notice, such review

9

would be based entirely on language that appears in the informal guidance, which carries the least weight out of the three sources of authority. The weight of the FAM is further diminished by the statute's express preclusion of judicial review of revocations and by the Second Circuit's refusal to grant *Chevron* deference to the FAM in *Jaen,* discussed *supra. See* 899 F.3d at 187 n. 4.

Furthermore, to the extent that the agency requires prior notice of revocation, the informal guidance still indicates that such notice procedures must only be followed "if practicable." *See* 9 FAM 403.11(A)(1)(a)(1). The Court has no law to apply in determining whether it was "practicable" to inform Ms. Tarlinskaya prior to her revocation or to evaluate whether the consular officer provided Ms. Tarlinskaya with sufficient explanation for the revocation. The term is not defined in the statute or regulations, although the FAM gives examples of impracticability. 9 FAM 403.11(A)(1)(a)(2). To adjudicate practicability, then, the court would be forced to impose its own standards on the State Department, which would usurp the legislative and executive role in foreign affairs.

Although the Second Circuit held in *Mantena* that a lack of jurisdiction to review a substantive decision does not preclude review of the procedure surrounding the decision, *Mantena* is distinguishable from the present case. *See Mantena,* 809 F.3d 721. *Mantena* involved a plaintiff who arrived in the United States on an "H-1B visa" and whose I-485 application for a "green card" was denied when her employer's I-140 petition supporting her H-1B visa was revoked. *See id.* at 723-24. The I-140 was revoked pursuant to 8 U.S.C. § 1155, which states: "The Secretary of Homeland Security may, at any time, for what he deems

10

to be good and sufficient cause, revoke the approval of any [I-140] petition…."³ *See Mantena*, 809 F. 3d at 728. The plaintiff received no notice of the petition's revocation until she filed her I-485 petition, which was denied because her visa had expired as a result of the revocation of the I-140. *Mantena,* 809 F.3d at 724. The Court found that the lack of notice provisions in the statute did not amount to a congressional grant of discretion over the procedure for revoking I-140 petitions. *Id.* at 729.

In contrast to the regulations concerning revocations of I-140 petitions, the regulations and agency guidance concerning State Department revocation of visas do include language conferring discretionary authority on the agency. The requirement to provide notice is limited to situations in which provision of notice is "practicable." *See* 22 C.F.R. § 41.122(c). The FAM, which prescribes notice of intent to revoke rather than merely notice of revocation, also qualifies the requirement with practicability. *See* 9 FAM 403.11(A)(1)(a)(1). The Second Circuit has previously held that similar language constitutes a grant of "considerable discretion" to an agency. *See Brodsky v. U.S. Nuclear Regulatory Com'n,* 704 F.3d 113, 121-22 (2d Cir. 2013) (holding that regulations providing for public input "to the extent practicable" prevented the Court from "readily second guess[ing] an agency decision not to hold a public hearing in a particular case.").

---

³ The Second Circuit noted that every Court of Appeals except the Ninth Circuit interpreted this statute to commit the revocation decision to the Secretary's discretion. *Mantena*, 809 F. 3d at 728.

11

Furthermore, unlike the plaintiff in *Mantena*, Ms. Tarlinskaya did receive notice of her revocation. *See* [Dkt. 1, ¶ 12]. Therefore, the situation in *Mantena* – an individual who was in the United States without proper documentation due to a material change in her status that was not communicated to her – does not exist in this case. Indeed, the prompt notice from the consular officer prevented Ms. Tarlinskaya from arranging travel without knowledge of her visa revocation and possibly entering the country illegally.

As the decision of whether and when to provide notice is committed to agency discretion, the Court lacks jurisdiction over Plaintiffs' claims of improper notice in Counts One, Two, and Three.

Second, Plaintiffs provide no authority binding the State Department to review visa revocations within a prescribed period. Plaintiffs allege that the Embassy is "required by law" to review the revocation of Ms. Tarlinskaya's visa. [Dkt. 12, at 4]. As authority for this requirement, Plaintiffs cite *Rivas v. Napolitano*, 714 F.3d 1108 (9th Cir. 2013). However, *Rivas* involved the reconsideration of a visa *refusal,* not reconsideration of a visa *revocation. See Rivas,* 714 F.3d at 1111. *Rivas* cites to the federal regulation for reconsideration of a refusal to issue a visa, which states: "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). There is no such requirement for visa revocations. Such decisions are committed entirely to the discretion of consular officers. *See* 8 U.S.C. § 1201(i). The federal regulations state that "a

12

consular officer, the Secretary, or a Department official to whom the Secretary has delegated this authority" is authorized to revoke a nonimmigrant visa "at any time, in his or her discretion." 22 C.F.R. § 41.122.

Ms. Tarlinskaya's visa application was not refused, her visa was revoked after it was issued. The right to review of a revocation, rather than a refusal, appears nowhere in the Immigration and Nationality Act or in the Code of Federal Regulations. Ms. Tarlinskaya is still able to reapply for a visa, and the consular officer who canceled her visa informed her of the steps she could take to reapply. *See* [Dkt. 1-6 (March 19, 2019 Message from Consulate)]. Absent any statutory or regulatory authority requiring the State Department to review revocations, the Court cannot adjudicate Plaintiffs' claims in Count One or Count Two that the State Department failed to review Ms. Tarlinskaya's revocation in a timely manner.

Finally, the substantive decision to revoke a visa is unambiguously committed to the Secretary of State's discretion. *See* 8 U.S.C. § 1201(i). Plaintiffs' Count Four challenges the basis of her revocation, arguing that it was impermissibly based on a "suspected ineligibility." [Dkt. 1, ¶¶ 30-33]. As the basis of Ms. Tarlinskaya's revocation is expressly non-reviewable by statute, the Court lacks subject matter jurisdiction over Count Four.

In order for this Court to have the power to hear Plaintiffs' action, Plaintiffs must find a constitutional or congressional grant of subject matter jurisdiction. *See* U.S. CONST. Art. III § 2. "[W]hen a federal court concludes that it lacks

subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). As the Court lacks subject matter jurisdiction over Plaintiffs' claims, the complaint must be dismissed.

### B. Plaintiff Does Not Show a Likelihood of Success on the Merits

Even if the Court had subject matter jurisdiction, Plaintiffs do not show a likelihood of success on the merits of their claims because they do not plead facts supporting the inference that the Embassy was required to provide prior notice of revocation or review of that revocation. Count One seeks a writ of mandamus. [Dkt. 1, ¶¶ 18-23]. For a district court to issue a writ of mandamus pursuant to 28 U.S.C. § 1361, the Court must find "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir. 1989) (quoting *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)). Plaintiffs fail to meet the first and second prongs of this test because Plaintiffs fail to show that they were entitled to prior notice of the intent to revoke Ms. Tarlinskaya's visa or subsequent review of the revocation.

Plaintiffs allege that the State Department is required to provide prior notice when canceling a visa. [Dkt. 1, ¶ 21]. However, the State Department is not required, in all cases, to provide any notice of revocation, let alone prior notice. The Department has discretion to provide notice that a visa "was revoked" and only "if practicable." 22 C.F.R. 42.122(c). Ms. Tarlinskaya was

notified of her visa revocation on March 19, 2019. [Dkt. 1, ¶ 12]. As discussed above, the Court is unable to determine whether such notification was "practicable" in this case because it lacks judicially manageable standards for determining practicability. However, assuming *arguendo* that the FAM guidance suffices, the FAM states that prior notice may not be practicable if "the consular officer has reason to believe that a notice of this type would prompt the alien to attempt immediate travel to the United States." 9 FAM 403.11(A)(1)(a)(2). Given that Plaintiffs allege that Ms. Tarlinskaya's visa was scheduled to expire on May 31, 2019, [Dkt. 12, at 8 n. 1], and that her son resided in the United States, a consular officer would certainly have reason to believe that providing Ms. Tarlinskaya with prior notice could prompt her to attempt to travel using that visa before it was revoked. Consequently, Plaintiffs are not likely to succeed on the merits of Count One.

Count Two alleges a violation of the Administrative Procedure Act, 5 U.S.C. § 555(b). [Dkt. 1, ¶¶ 24-25]. § 555(b) states that each agency shall conclude a presented to it "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b). This allegation is vague and conclusory. Although the consular officer did not immediately respond to Plaintiffs' counsel's request for further information about the revocation, the officer did respond within roughly three weeks. [Dkt. 1, ¶¶ 13-16]. Plaintiffs provide the Court with no basis to conclude that there is a "matter" before the Department of State, that the Department did not provide "due regard" to Ms. Tarlinskaya's convenience or necessity, or that the matter was not

concluded "within a reasonable time." Therefore, Plaintiffs cannot establish a likelihood of success on the merits of Count Two.

Counts Three and Four assert violations of the Foreign Affairs Manual. For the reasons discussed above, Plaintiffs cannot state a claim for violations of the Foreign Affairs Manual, which is not binding agency authority and does not provide a federal cause of action.

In sum, even if the Court did have jurisdiction to review Plaintiffs' claims, Plaintiffs do not make the showing required to issue a TRO.

## Conclusion

As Plaintiffs cannot meet the standard to obtain a temporary restraining order, Plaintiffs' Motion for a Temporary Restraining Order [Dkt. 12] is DENIED. As the Court lacks subject matter jurisdiction over Plaintiffs' claims, the case is DISMISSED. The Clerk is directed to close this case.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: May 23, 2019